

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00148-CR
_____

NATHAN LEE WOODARD, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 371st District Court
Tarrant County, Texas
Trial Court No. 1720670

Before Kerr, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Kerr

# MEMORANDUM OPINION

This appeal arises out of Appellant Nathan Woodard's murder conviction and 80-year sentence. In two points, Woodard complains about the State's alleged improper jury argument during the punishment phase. We affirm.

## I. Factual and Procedural Background

Woodard's mother was Teresa Pierce. Teresa tried to help Woodard find money, housing, and employment. But Woodard used drugs and caused problems for his mother and her family. Among other things, Woodard once showed up to Teresa's residence with a firearm, and on another occasion, he slashed her tires. Consequently, Teresa asked the police to issue a criminal-trespass warning to Woodard, which upset him.

Because of these incidents, Teresa's family installed a motion-activated security camera over their residence's driveway. The camera captured Teresa pulling into her driveway and getting out of her car. Tragically, the video then showed that Woodard rapidly approached his mother, tackled her to the ground, and killed her by repeatedly stabbing her.

Woodard fled and got new clothes from Walmart. When police stopped Woodard the next day, he was wearing his new clothes, and he refused to give his name.

The State charged Woodard with murder and tried the case to a jury, which found Woodard guilty and assessed his punishment at 80 years' confinement. The trial court sentenced him accordingly.

## II. Discussion

Woodard raises two points concerning the State's punishment-phase jury argument. We first set out the applicable standard of review, and then we analyze each of the two complained-of portions of jury argument.

### A. Standard of Review and Applicable Law

The law provides for, and presumes, a fair trial, free from improper argument by the State. *Borjan v. State*, 787 S.W.2d 53, 56 (Tex. Crim. App. 1990). During closing argument, the State may (1) summarize the evidence, (2) make reasonable deductions from the evidence, (3) answer opposing counsel's arguments, or (4) plead for law enforcement. *Freeman v. State*, 340 S.W.3d 717, 727 (Tex. Crim. App. 2011).

We review a trial court's overruling an objection to improper jury argument for an abuse of discretion. *Winchester v. State*, No. 02-19-00293-CR, 2020 WL 7258058, at *3 (Tex. App.—Fort Worth Dec. 10, 2020, pet. ref'd) (mem. op., not designated for publication) (citing *Milton v. State*, 572 S.W.3d 234, 241 (Tex. Crim. App. 2019)). Provided that a trial court's decision falls within the zone of reasonable disagreement, a trial court does not abuse its discretion. *Id.* (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g)).

But even when a statement exceeds the permissible bounds, we will not reverse the judgment unless the error affected the defendant's substantial rights. Tex. R. App. P. 44.2(b); *Freeman*, 340 S.W.3d at 728; *see Martinez v. State*, 17 S.W.3d 677, 692–93 (Tex. Crim. App. 2000) (noting that precedent "suggests that most comments that fall outside the areas of permissible argument" will be nonconstitutional). In determining whether substantial rights were affected, we consider (1) the severity of the misconduct (that is, the prejudicial effect of the prosecutor's remarks), (2) curative measures, and (3) the certainty of the punishment assessed absent the misconduct. *Freeman*, 340 S.W.3d at 728.

**B. Analysis**

### 1. The State's community-expectations argument

In his first point, Woodard argues that the trial court erred by overruling his objection to the following portion of the State's punishment-phase argument:

> [PROSECUTOR]: If you heard he was bad in jail -- while he's been in jail, we would have brought it to you. Correct. It's been one place where he can't hurt others, and it's in there. Because if he's not in there, then he's back out here with us and our family members.
>
> We've seen what he's capable of doing to his own mother. What do you think he would do to you or me on the street? What do you think he would do to anybody -- any member of our community out there? If he can do that to his own mother, he can do that to any one of us at any second, any one of our family members at any second.
>
> I'm going to tell y'all right now, our community expects that justice is going to be served.

[DEFENSE COUNSEL]: Judge, that's an improper plea for law enforcement.

THE COURT: All right. It's overruled.

[PROSECUTOR]: Our community expects that justice is going to be served, and justice will be served here today with your sentence.

So when you go home and you talk to your family and your friends finally about the outcome of this case and you tell them the most graphic thing you've ever seen, when you think about our community and your friends and family, and if they hear you gave anything less than a life sentence, our community would be absolutely outraged.

Our community needs to know that something is happening to people like this, people capable of this. They do not belong with the rest of us. They are not safe, they are dangerous, they are violent. There is a place for them, and it is in the prison system. It is not back out with us.

So I'm asking you-all to go back there and give a life sentence and see that justice is done.

Prosecutorial argument asking a jury to "represent the community" and "send a message" falls within the parameters of proper argument as a plea for law enforcement. *Harris v. State*, 122 S.W.3d 871, 888 (Tex. App.—Fort Worth 2003, pet. ref'd). But prosecutorial argument is improper if it induces the jury to reach a particular verdict based upon the demands, desires, or expectations of the community. *Id.*; *see also Cortez v. State*, 683 S.W.2d 419, 421 (Tex. Crim. App. 1984) (summarizing disapproved jury arguments that "ask the jury to convict or punish the defendant upon public sentiment or desire rather than upon the evidence that the jury had received").

Woodard argues that the State made "an improper plea that the community expect[ed] justice to be served with a life sentence and it would be outraged by any less of a sentence." The State argues that any error in overruling Woodard's objection was harmless. Assuming that the challenged portion of the prosecutor's argument was improper, we conclude that any error in overruling Woodard's objection was harmless.

As the above-quoted portion of jury argument shows, Woodard objected only to the initial mention of "our community expects that justice is going to be served"; that portion did not specifically request the life sentence. The State continued arguing about the community's expectations and then concluded by specifically asking for a life sentence to "see that justice is done[,]" but Woodard made only the initial objection and allowed the jury to hear the remaining argument without objection. Because the State made the same or similar arguments about the community's expectations without objection, any error in the trial court's overruling Woodard's initial objection was harmless. *See Howard v. State*, 153 S.W.3d 382, 385 (Tex. Crim. App. 2004); *Johnson v. State*, No. 07-23-00411-CR, 2024 WL 3433825, at *1–2 (Tex. App.—Amarillo July 16, 2024, no pet.) (mem. op., not designated for publication); *Moyer v. State*, 948 S.W.2d 525, 531 (Tex. App.—Fort Worth 1997, pet. ref'd) ("Where the same objected-to argument is presented elsewhere during trial without objection, no reversible error exists."). We overrule Woodard's first point.

## 2. The State's alleged comment on Woodard's failure to testify

In his second point, Woodard argues that the trial court erred by overruling his objection to the following argument:

> [PROSECUTOR] And then he got up and he fled -- he ran -- because he knew it was wrong. Went straight to Walmart. Knew he had to get out of those clothes. Threw the other clothes away, threw the knife away, got the new clothes. And then he's out riding his bicycle the next day as if nothing happened.
>
> And then when the police encounter him, he starts lying about his name because he knows he's caught. If he didn't think he did anything wrong, why not say your name? He knew exactly what he did. This was all planned. This was all calculated.
>
> And at any point, if this was just a moment of a mental lapse -- at any point, did he get down on his knees and say, "What did I do? I can't believe what I've just done"?
>
> No. Of course he didn't. Because it was planned. At no point did he ever apologize. In any of the evidence that you saw, any of the body cam that you saw, nothing.
>
> [DEFENSE COUNSEL]: Judge, I'm going to object to him commenting on the defendant's failure to testify.
>
> THE COURT: I didn't hear that so overruled.

Woodard maintains that the State violated his right against self-incrimination when it commented on his failure to testify. *See* U.S. Const. amend. V; Tex. Const. art. I, § 10;[1] Tex. Code Crim. Proc. Ann. art. 38.08.

---

[1]Woodard's brief references the Texas constitution but does not argue that the Texas constitution provides greater protection than the federal constitution. Thus, we analyze his self-incrimination argument solely on federal grounds. *See Segundo v. State*, 270 S.W.3d 79, 96 n.59 (Tex. Crim. App. 2008) (citing *Muniz v. State*, 851 S.W.2d 238,

A court may not hold a defendant's decision to not testify against him, and counsel may not allude to a defendant's decision to not testify. U.S. Const. amend. V; Tex. Code Crim. Proc. Ann. art. 38.08. To determine if a prosecutor's comment violated the Fifth Amendment and Article 38.08 by impermissibly referring to an accused's decision to not testify, we must decide whether the language used was plainly intended or was of such a character that the jury naturally and necessarily would have considered it to be a comment on the defendant's decision to not testify. U.S. Const. amend. V; Tex. Code Crim. Proc. Ann. art. 38.08; *Randolph v. State*, 353 S.W.3d 887, 891 (Tex. Crim. App. 2011); *see Fuentes v. State*, 991 S.W.2d 267, 275 (Tex. Crim. App. 1999). We must view the offending language from the jury's standpoint, and the implication that the comment referred to the accused's decision to not testify must be clear. *Randolph,* 353 S.W.3d at 891. A merely indirect or implied allusion to the defendant's decision to not testify does not violate the accused's right to remain silent. *Id.* In short, context matters. *Id.*

For example, "when a defendant makes a statement [that] is admitted into evidence, the State's reference to the statement and comparison between the statement and the other evidence collected is not a comment on the defendant's failure to testify or his right to remain silent." *Garcia v. State*, 126 S.W.3d 921, 924

251–52 (Tex. Crim. App. 1993) (holding that failure to provide a rationale for interpreting state constitution more broadly than federal constitution and failure to provide separate substantive analysis for state ground forfeits state ground)).

8

(Tex. Crim. App. 2004); *see, e.g.*, *Cruz v. State*, 225 S.W.3d 546, 548–50 (Tex. Crim. App. 2007) (concluding that because the prosecutor's statements to the jury referred to the defendant's own written statement, which was in evidence, they were not a comment on the defendant's failure to testify); *Lopez v. State*, 339 S.W.2d 906, 910–11 (Tex. Crim. App. 1960) (holding the State's reference to the defendant's "not telling everything" was a reference to the defendant's written statement and not a comment on the defendant's failing to testify). Such statements are "fair game" for the State to comment on, and doing so does "not run afoul of the prohibition of commenting on the defendant's failure to testify." *Graves v. State*, No. 02-22-00100-CR, 2023 WL 2607642, at *7 (Tex. App.—Fort Worth Mar. 23, 2023, no pet.) (mem. op., not designated for publication).

Here, nothing in the record suggests that the State plainly intended its remark to be a comment on Woodard's failure to testify at trial. Rather, in context, the State's argument described and summarized Woodard's statements and actions captured on the body-camera footage when police apprehended Woodard the day after he murdered his mother. In the admitted body-camera evidence, the jury saw and heard Woodard's interactions with the police. Woodard had initially refused to identify himself, lying that his name was "Ricky." An officer asked Woodard if his name was Nathan and stated that he believed Woodard was the "guy" police were looking for. Woodard then said nothing before being placed in a police car.

The State's argument summarized what is shown in the body-camera evidence and accurately reflects that Woodard did not attempt to explain his actions or apologize during his interaction with the police. *See Garcia*, 126 S.W.3d at 924. At most, the State's comment was merely an implied or indirect allusion to Woodard's failure to testify. *See Randolph*, 353 S.W.3d at 891. Because the trial court did not abuse its discretion by overruling Woodard's objection regarding the State's alleged comment on Woodard's failure to testify, we overrule Woodard's second point.

### III. Conclusion

Having overruled Woodard's two points, we affirm the trial court's judgment.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  February 13, 2025